# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.*<br>PAUL TERRION and JODY EBERHART, *et al.*,<br><br>*Plaintiffs/Relators*,<br><br>v.<br><br>POINT BLANK ENTERPRISES, INC.,<br><br>*Defendant*. | Civil Action No.: 1:19-cv-3581 |

## RELATORS' BRIEF IN OPPOSITION TO DEFENDANT'S RESPONSE TO THE GOVERNMENT'S STATEMENT OF INTEREST

Defendant asks the Court to reject Relators' allegations that Defendant's conduct was material, to ignore the government's own statement that its decision not to intervene in this case is irrelevant, and to draw inferences in Defendant's favor. "This turns Rule 12(b)(6) on its head." *Fuentes-Fernandez & Co. v. The Corvus Grp., Inc.*, 174 F. Supp. 3d 378, 385 n.10 (D.D.C. 2016). In addition, Defendant insists on an onerous outcome-materiality standard that finds no support in the text of the FCA or in controlling precedent.

**A. The government's decision not to intervene is irrelevant.**

The FCA is designed to "encourage . . . private enforcement suits." S. Rep. No. 99-345, at 23-24 (1986), *as reprinted in* 1986 U.S.C.C.A.N 5266, 5288-89. To this end, the FCA establishes a public-private partnership in which a whistleblower "shall have the right to conduct the action" when the government declines to intervene in the matter. *See* 31 U.S.C. § 3730(c)(3).

The FCA permits a private litigant to pursue a case even if the government's investigation reveals "meritorious claims." *U.S. ex rel. Berge v. Bd. of Trs.*, 104 F.3d 1453, 1458 (4th Cir. 1997). The government's decision not to intervene, therefore, does not mean that "it considers the evidence of wrong doing [*sic*] insufficient or the . . . relator's allegations . . . to be without merit." *U.S. ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1360 n.17 (11th Cir. 2006). "In any given case, the government may have a host of reasons for not pursuing a claim." *Id.*; *accord U.S. ex rel. Taylor v. Boyko*, 39 F.4th 177, 194 (4th Cir. 2022) ("We cannot presume lack of materiality from such vagaries of fate. Nor does the Supreme Court."); *U.S. ex rel. Williams v. Bell Helicopter Textron Inc.*, 417 F.3d 450, 455 (5th Cir. 2005) ("The statute . . . does not require the government to proceed if its investigation yields a meritorious claim . . . . [I]t may opt out for any number of reasons."); *U.S. ex rel. USN4U, LLC v. Wolf Creek Fed. Servs.*, 34 F.4th 507, 518 (6th Cir. 2022) ("The very fact that the FCA allows private relators to enforce the Act . . . implies a recognition that the

Government may have limited resources or may choose to focus its enforcement efforts elsewhere." (citation omitted)); *U.S. ex rel. Chandler v. Cook Cnty., Ill.*, 277 F.3d 969, 974 n.5 (7th Cir. 2002) ("The Justice Department may have myriad reasons for permitting the private suit to go forward including limited prosecutorial resources and confidence in the relator's attorney."). Indeed, non-intervened cases have returned billions of dollars to the federal fisc.[1]

Defendant evidently disagrees with this statutory scheme, repeatedly arguing that the government's decision not to intervene shows that Defendant's wrongdoing was immaterial and that the case should be dismissed. Def.'s Mem. in Support of Mot. to Dismiss [ECF 17-1] at 2, 15; Def.'s Reply Mem. in Support of Mot. to Dismiss [ECF 27] at 12-13. However, as the government points out in its statement of interest, its intervention decision is irrelevant to the merits of the case.

Confronted with the authorities cited by the government, Defendant now attempts to pivot. In its responsive brief, Defendant suggests that, although declination alone may not be relevant, the government must have concluded this case is meritless because it declined to intervene after reviewing "extensive . . . evidence." Def.'s Response to Gov't's Statement of Interest ("Resp.") [ECF 29-1] at 2 (internal quotation marks omitted). But this is a distinction without a difference. In every FCA case, a whistleblower must provide the government with all the evidence in his or her possession, 31 U.S.C. § 3730(b)(2), and the government must "diligently . . . investigate" the allegations, *id.* § 3730(a). Thus, "under [Defendant's] logic, any case in which the Government

---

[1] The government has recovered more than $3.6 billion from settlements and judgments in non-intervened FCA litigation since fiscal year 2015. U.S. Dep't of Justice, *Fraud Statistics* at 2 (Feb. 7, 2023), *available at* https://www.justice.gov/opa/press-release/file/1567691/download. Last year, a single non-intervened case resulted in a $900 million settlement. Press Release, U.S. Dep't of Justice, *Biogen Inc. Agrees to Pay $900 Million to Settle Allegations Related to Improper Physician Payments* (Sept. 26, 2022), https://www.justice.gov/opa/pr/biogen-inc-agrees-pay-900-million-settle-allegations-related-improper-physician-payments.

declines to intervene—approximately 85% of *qui tam* cases—would presumptively fail the materiality test," a theory "conspicuous[ly] absen[t] from *Escobar* and its progeny." *U.S. ex rel. Montcrieff v. Peripheral Vascular Assocs.*, --- F. Supp. 3d ----, No. SA-17-CV-00317-XR, 2023 WL 139319, at *9 (W.D. Tex. Jan. 9, 2023). Tellingly, Defendant does not cite to a single case in support of its position, which would "effectively transform[] the legal definition of materiality into a simple question of whether the government took enforcement action." *U.S. ex rel. El-Amin v. George Washington Univ.*, 533 F. Supp. 2d 12, 22 (D.D.C. 2008). The Court should take the government at its word: its decision not to intervene is not a comment on the merits of the case.

### B. Defendant impermissibly asks the Court to draw inferences in its favor.

Furthermore, Defendant would have the Court make three factual findings in Defendant's favor: *first*, that all relevant governmental entities had actual knowledge of Defendant's misconduct; *second*, that they took no action with respect to this knowledge; and *third*, that such behavior can be explained only by a lack of materiality. Defendant's factual assertions are contradicted by the allegations in the FAC, and Defendant's conclusions rely on numerous inferences against Relators that are impermissible at this stage.

The FAC, which must be taken as true, alleges that "the governmental entities that paid for the body armor" did not know it was defective. FAC [ECF 16] ¶ 16; *accord* FAC ¶ 138 ("government officials have relied on PBE's misstatements"). The FAC further alleges that two governmental entities did act in response to learning of the allegations against Defendant. *Id.* ¶ 140 ("Massachusetts and Texas suspended the purchase of PBE's SSBS vests under their statewide contracts."). Apart from these two states, however, the FAC does not allege that any entity responsible for purchasing Defendant's products—as opposed to the Civil Division of the U.S. Department of Justice and the various state Attorney General offices—has any knowledge of

Relators' allegations, let alone actual knowledge of Defendant's fraud.[2] Moreover, even if those who purchased Defendant's defective body armor had actual knowledge of Defendant's misconduct, it would still be reasonable to infer that the government "continued to pay . . . for any number of reasons that do not render [Defendant's] fraud immaterial." *See U.S. ex rel. Cimino v. IBM Corp.*, 3 F.4th 412, 423 (D.C. Cir. 2021). At this stage of the case, the Court must draw such an inference in Relators' favor.

### C. The test for materiality is whether Defendant's falsehoods had a "natural tendency" to affect the government's payment decision.

Finally, Defendant advocates for an outcome-materiality test that contradicts the text of the FCA and controlling precedent. The so-called "watered-down materiality test" of which Defendant complains, Resp. at 2, is actually the statutory definition of materiality—one that Defendant has stubbornly refused to acknowledge in any of its briefing.[3] Instead, Defendant

---

[2] The materiality inquiry focuses on "the recipient of the representation," not an unaffiliated actor from a different sector of the government. *See Universal Health Servs., Inc. v. U.S. ex rel. Escobar*, 579 U.S. 176, 193 (2016); *see also Veridyne Corp. v. United States*, 758 F.3d 1371, 1379 (Fed. Cir. 2014) ("[R]egardless of [one agency's] knowledge, the [payor agency] did not have knowledge that [Defendant's] statements were fraudulent."); *Massachusetts v. Mylan Lab'ys*, 608 F. Supp. 2d 127, 150 (D. Mass. 2008) (only knowledge of payor agency is arguably relevant); *cf. U.S. Small Bus. Admin. v. Bridges*, 894 F.2d 108, 112 (5th Cir. 1990) ("[K]nowledge of one . . . government agency will not be imputed to another agency."); *Barrie v. United States*, 615 F.2d 829, 830 (9th Cir. 1980) ("The imputation of knowledge of one government agency to another is impermissible.").

[3] Defendant's citation to *Johnson v. District of Columbia*, 144 A.3d 1120, 1137 (D.C. 2016), which erroneously opined that materiality is governed by something akin to an "outcome test," remains unavailing. *See U.S. ex rel. Longhi v. United States*, 575 F.3d 458, 470 (5th Cir. 2009) ("If Congress intended materiality to be defined under the more narrow outcome materiality standard, it had ample opportunity to adopt the outcome materiality standard in FERA. Instead, Congress embraced the test as stated by the Supreme Court and several courts of appeals."); *U.S. ex rel. Morsell v. NortonLifeLock, Inc.*, 560 F. Supp. 3d 32, 41 (D.D.C. 2021) ("If materiality looks to the effect on the 'likely' behavior of the recipient, it cannot always require evidence of actual effect. Similarly, the . . . [FCA] does not require demonstrating effect on actual contracting or payment decisions . . . ."). And Defendant again confuses Relators' burden on summary judgment with Relators' burden on a motion to dismiss, erroneously citing two summary judgment rulings for the "standards" to be applied at this stage of the litigation. Resp. at 2-3 (citing *Johnson*, 144 A.3d at 1137-38, and *U.S. ex rel. McBride v. Halliburton Co.*, 848 F.3d 1027, 1031 (D.C. Cir. 2017)).

perseverates in describing the materiality test as "demanding." Although this adjective "give[s] flavor to the Court's discussion" in *Escobar*, it does "not establish the *test* that the Court requires." *U.S. ex rel. Rose v. Stephens Inst.*, 909 F.3d 1012, 1019 n.3 (9th Cir. 2018). The touchstone for materiality is provided by the statute itself: "having a natural tendency to influence, or be capable of influencing, the payment . . . of money." 31 U.S.C. § 3729(b)(4); *see Cimino*, 3 F.4th at 423 (misstatement can be material irrespective of actual effect on payment decision). The FAC exceeds this standard, alleging why the defects in Defendant's body armor were important and how the government would not have paid for the body armor had it been aware of such defects. *E.g.*, FAC ¶¶ 12, 15-16, 137-40.

### D. Conclusion

Defendant's response to the government's statement of interest—like the remainder of its motion to dismiss briefing—is premised on a mere disagreement with Relators' factual allegations, coupled with a fundamental misunderstanding of the pleading standards for an FCA case. "The question here . . . is whether [Relators] plausibly *pleaded* materiality." *See Cimino*, 3 F.4th at 423. Relators have done so.

Date: March 20, 2023

Respectfully submitted,

*/s/ Noah M. Rich*

Noah M. Rich, Bar # 1033799
**BARON & BUDD, P.C.**
600 New Hampshire Avenue NW, 10th Fl.
Washington, DC 20037
nrich@baronbudd.com
Telephone: 202-333-4562
Facsimile: 202-337-1039

## CERTIFICATE OF SERVICE

  I hereby certify that on March 20, 2023, a copy of the foregoing Brief in Opposition to Defendant's Response to the Government's Statement of Interest was served on all counsel of record via this Court's CM/ECF filing system.

               */s/ Noah M. Rich*
               Noah M. Rich